IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

| | |
|---|---|
| **BARRETT BARIA; et al.** | **PLAINTIFFS** |
| v. | **CAUSE NO. 1:19cv248-LG-JCG** |
| **SINGING RIVER ELECTRIC COOPERATIVE** *also known as* Singing River Electric Power Association | **DEFENDANT** |

## MEMORANDUM OPINION AND ORDER GRANTING MOTION TO COMPEL ARBITRATION, DENYING MOTION FOR LIMITED LIFTING OF THE STAY ON DISCOVERY, AND ADMINISTRATIVELY CLOSING CASE

BEFORE THE COURT are the [3] Motion to Compel Arbitration filed by Defendant Singing River Electric Cooperative and the [9] Motion for Limited Lifting of the Stay on Discovery filed by Plaintiffs Barrett Baria, Edward Zielinski, and Lorraine Zielinski. The Motion to Compel Arbitration contends that Plaintiffs have agreed, through their contracts with Singing River, to arbitrate the claims alleged in this lawsuit. Singing River thus asks for the Court to order Plaintiffs to individually arbitrate their claims and to stay this case pending arbitration. The Motion for Limited Lifting of the Stay of Discovery seeks discovery into asserted issues of fact surrounding whether there is a valid agreement to arbitrate claims between Plaintiffs and Singing River. Both motions are fully briefed. Having considered the submissions of the parties, the record, and relevant law, the Court finds that Singing River's Motion to Compel arbitration should be granted and Plaintiffs' Motion to lift the stay of discovery should be denied.

## I. BACKGROUND

The Singing River Electric Cooperative ("Singing River" or "the Cooperative") is a rural electric cooperative providing electricity to tens of thousands of Mississippi residents and businesses. It exists as a non-profit corporation organized and created pursuant to section 77-5-205 of the Mississippi Code. Such "corporation(s) not organized for pecuniary profit" can only be formed "for the purpose of promoting and encouraging the fullest possible use of electric energy by making electric energy available at the lowest cost consistent with sound economy and prudent management of the business of such corporations." Miss. Code. Ann. § 77-5-205.

In this putative class-action lawsuit, Plaintiffs – who are ratepaying members of Singing River – allege that Singing River has wrongfully withheld and continues to wrongfully withhold patronage capital from current and former members that, under Mississippi law, should have been disbursed to the Cooperative's members. Despite Mississippi law's requirement that electric cooperatives refund excess revenue to its members, Plaintiffs claim that Singing River held $149,643,679 of its members' money and had invested another $60,663,747 in associated organizations at the end of the 2016 calendar year. Plaintiffs say these sums of money were roughly equal to 41% of Singing River's assets and were, therefore, excessive.

Plaintiffs filed their Complaint in the Circuit Court of Jackson County, Mississippi on March 22, 2019. Singing River then removed the case to federal district court and filed the instant Motion to Compel Arbitration, invoking Section 4 of the Federal Arbitration Act ("FAA"), 9 U.S.C. § 4. Thereafter, Plaintiffs responded to this Motion and filed their Motion for Limited Lifting of the Stay of Discovery.

## II. DISCUSSION

a. <u>Motion to Compel Arbitration Standard of Review</u>

Section 2 of the FAA provides,

> A written provision in any . . . contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2. "Under the Act, arbitration is a matter of contract, and courts must enforce arbitration contracts according to their terms." *Henry Schein, Inc. v. Archer & White Sales, Inc.,* 139 S. Ct. 524, 529 (2019). Accordingly, the Supreme Court "ha[s] held that parties may agree to have an arbitrator decide not only the merits of a particular dispute but also gateway questions of arbitrability, such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy." *Id.* (citations and internal quotation marks omitted). "An agreement to arbitrate a gateway issue is simply an additional, antecedent agreement the party seeking arbitration asks the federal court to enforce, and the FAA operates on

this additional arbitration agreement just as it does on any other." *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 70 (2010).

When a party seeks to compel arbitration based on a contract's arbitration clause, the Court engages in a two-step analysis. *Kubala v. Supreme Prod. Servs., Inc.*, 830 F.3d 199, 201 (5th Cir. 2016). At step one, "the court must determine 'whether the parties entered into *any arbitration agreement at all*.'" *IQ Prod. Co. v. WD-40 Co.*, 871 F.3d 344, 348 (5th Cir. 2017) (quoting *Kubala*, 830 F.3d at 201).

> "This first step is a question of contract formation only – did the parties form a valid agreement to arbitrate some set of claims." This inquiry is for the court: "Where the very existence of any [arbitration] agreement is disputed, it is for the *courts* to decide at the outset whether an agreement was reached[.]"

*Lloyd's Syndicate 457 v. FloaTEC, L.L.C.*, 921 F.3d 508, 514 (5th Cir. 2019) (alterations in original) (citations omitted). Only if the Court answers "yes" to the first inquiry does the Court proceed to the second step. "At step two, we engage in a 'limited' inquiry: '[W]hether the [parties'] agreement contains a valid delegation clause.'" *Id.* (quoting *IQ Prod.*, 871 F.3d at 348). To do so, the Court asks only whether there is "clear and unmistakable" evidence that the parties' agreement delegates threshold issues. *Henry Schein*, 139 S. Ct. at 530. "[I]f a valid agreement exists, and if the agreement delegates the arbitrability issue to an arbitrator, a court may not decide the arbitrability issue." *Id.*

b. <u>Analysis</u>

Singing River argues throughout its briefing on both motions that (1) its bylaws establish the terms and conditions upon which it renders electrical service to

members, (2) the bylaws contain a valid arbitration agreement, and (3) the arbitration agreement contains a valid delegation clause. Plaintiffs agree that Singing River's bylaws establish terms and conditions of service. However, because the bylaws were simply incorporated by reference in the single page application for electricity – which is the only contractual document Plaintiffs signed and did not, itself, contain an arbitration provision – Plaintiffs contend that neither the arbitration agreement nor its delegation clause are valid. Alternatively, Plaintiffs move for leave to conduct discovery into (1) the meeting minutes of the Singing River Board of Directors for meetings during which the addition of the arbitration provision was discussed, (2) whether Singing River gave ratepaying members notice of an amendment to the bylaws to include an arbitration provision, and (3) whether Plaintiffs were provided a copy of the bylaws when they initially applied for electricity.

The Court turns to step one of the two-step inquiry – whether the parties entered into an arbitration agreement. In conducting this inquiry, the Fifth Circuit has distinguished "between 'validity' or 'enforceability' challenges and 'formation' or 'existence' challenges." *Arnold v. Homeaway, Inc.*, 890 F.3d 546, 550 (5th Cir. 2018) (citing *Rent-A-Ctr.*, 561 U.S. at 70 n.2; *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 444 n.1 (2006)). "[W]here the 'very existence of a contract' containing the relevant arbitration agreement is called into question, the federal courts have authority and responsibility to decide the matter." *Id.* (quoting *Banc One Acceptance Corp. v. Hill*, 367 F.3d 426, 429 (5th Cir. 2004)). However, questions

over the validity or enforceability of an arbitration provision are threshold issues that may be properly delegated to the arbitrator. *See id.* at 551-52.

> Though the difference between formation and validity may be unclear at the margins, the Supreme Court has suggested that the category of arguments that question the very existence of an agreement include "whether the alleged obligor ever signed the contract, whether the signor lacked authority to commit the alleged principal, and whether the signor lacked the mental capacity to assent."

*Id.* at 550 (footnote omitted) (quoting *Buckeye Check Cashing*, 546 U.S. at 444 n.1).

Mississippi law provides that the powers of a corporation such as Singing River "shall be vested in and exercised by [a] board of directors." Miss. Code Ann. § 77-5-221. The board of directors is granted the authority "[t]o adopt and amend bylaws for the management and regulation of the affairs of the corporation." Miss. Code Ann. § 77-5-223(a). "The bylaws of a corporation may make provisions, not inconsistent with law or its certificate of incorporation, regulating . . . the terms and conditions upon which the corporation is to render service to its members; . . . and such other matters as the board may deem appropriate or desirable." *Id.* "Any person may become and remain a member [of a corporation] if such person shall use energy supplied by such corporation and shall comply with the terms and conditions in respect to membership contained in the bylaws of such corporation . . . ." Miss. Code Ann. § 77-5-225.

Section 11.05 of Singing River's bylaws provides in pertinent part,

> UNLESS OTHERWISE PROHIBITED BY LAW, ANY CONTROVERSY OR CLAIM ARISING OUT OF OR RELATING TO THESE BYLAWS, OR THE BREACH

> THEREOF, OR ANY CONTROVERSY OR CLAIM
> ARISING OUT OF OR RELATING TO PATRONAGE
> CAPITAL SHALL BE RESOLVED BY BINDING
> ARBITRATION ADMINISTERED BY THE AMERICAN
> ARBITRATION ASSOCIATION IN ACCORDANCE
> WITH ITS ARBITRATION RULES AFTER ALL
> CONDITIONS PRECEDENT AS SET FORTH IN
> ARTICLE VIII, SECTION 8.01, IF APPLICABLE, HAVE
> BEEN MET. THIS AGREEMENT INVOLVES
> INTERSTATE COMMERCE SUCH THAT THE
> FEDERAL ARBITRATION ACT, 9 U.S.C. § 1, ET SEQ.
> SHALL GOVERN THE INTERPRETATION AND
> ENFORCEMENT OF THIS ARBITRATION
> AGREEMENT. THE ARBITRATION SHALL BE HELD
> IN THE STATE OF MISSISSIPPI AT A LOCATION TO
> BE DESIGNATED BY THE PARTY NOT MAKING THE
> INITIAL DEMAND FOR ARBITRATION. A JUDGMENT
> ON THE AWARD RENDERED BY THE ARBITRATOR
> SHALL BE ENTERED IN ANY COURT HAVING
> JURISDICTION THEREOF. EACH PARTY AGREES TO
> PAY ITS OWN ATTORNEYS' FEES AND COSTS, AND
> EACH PARTY AGREES TO SHARE EQUALLY IN THE
> COST OF THE ARBITRATOR.

(Mot. Compel Arb. Ex. 5, at 42, ECF No. 3-5 (ECF pagination).)

On its face, this appears to be a valid arbitration agreement between Plaintiffs and Singing River. Notwithstanding, Plaintiffs contend that they did not agree to arbitrate their claims. They say the only document presented to them at the time they signed up for service with Singing River was a one-page application devoid of any reference to arbitration. They also assert that, if the arbitration clause was added to the bylaws subsequent to commencing service, they never received notice of the Board's intent to make this amendment. Essentially, Plaintiffs contend that they could not have assented to this arbitration clause because they were unaware of the provision both when they applied for service and

during the pendency of their service contract. Thus, say Plaintiffs, they never entered into an agreement to arbitrate.

Plaintiffs couch this argument as one in the vein of a formation deficiency, but this does not make it so. Plaintiffs agree that a contract for provision of electrical services exists between themselves and Singing River. It is also clear that Singing River's bylaws regulate "the terms and conditions upon which [Singing River] is to render service to its members," Miss. Code Ann. § 77-5-223(a), and that the bylaws include an arbitration provision. Thus, Plaintiffs' contention that they never assented to arbitration goes to the validity or enforceability of the bylaws' arbitration provision, not the existence of the provision. *See Arnold*, 890 F.3d at 551 ("Arnold's allegation that a particular provision of the contract is illusory is properly considered a validity challenge rather than a formation challenge.").

Plaintiffs' additional arguments are no different in this sense. They maintain (1) the arbitration provision in the bylaws is ambiguous because the bylaws includes a separate reference to arbitration that conflicts with the clause in section 11.05, (2) the Board lacks authority to abrogate Plaintiffs' right to trial in a court of competent jurisdiction, (3) the theory of direct-benefits estoppel is no bar to Plaintiffs' claims, (4) the arbitration clause is procedurally unconscionable, and (5) Plaintiffs' claims fall outside the scope of the arbitration provision. None of these theories challenge the formation of the arbitration agreement. "And so, [the Court] move[s] on to consider the parties' arguments concerning the purported delegation clause." *Id*.

As previously stated, parties are free to delegate threshold questions to the arbitrator under the FAA. The Fifth Circuit has held "that, generally, stipulating that the [American Arbitration Association ('AAA')] Rules will govern the arbitration of disputes constitutes . . . 'clear and unmistakable' evidence" that the parties agreed to arbitrate threshold questions. *Id.* at 551-52 (citing *Petrofac, Inc. v. Dyn-McDermott Petroleum Operations Co.*, 687 F.3d 671, 674-75 (5th Cir. 2012)). Section 11.05 of Singing River's bylaws plainly stipulate that the AAA Rules will govern arbitration. Plaintiffs argue to the contrary by rehashing their arguments challenging the enforceability of the arbitration provision and affixing the additional contention that the delegation clause cannot be valid because the underlying arbitration agreement is invalid. "[A]gain, for present purposes, we are concerned with whether the parties manifested intent to arbitrate threshold questions, not whether [Plaintiffs'] agreement to incorporate the AAA rules was valid." *Id.* at 553. "*Petrofac* has already answered the basic question of textual interpretation presented here: an agreement to arbitrate under the AAA rules constitutes express incorporation of those rules, which constitutes clear and unmistakable evidence of the parties' intent." *Id.* (citing *Petrofac*, 687 F.3d at 674-75). Section 11.05 of the bylaws expressly incorporates the AAA rules. The parties have therefore clearly and unmistakably demonstrated their intent to delegate.

Plaintiffs do not specifically challenge the validity of the delegation clause. Rather, their arguments contend that the arbitration provision as a whole is

unenforceable under Mississippi law. Because Plaintiffs' "challenge is not specific to the delegation clause, [they] must present it to an arbitrator." *Id.* at 554.

## III. CONCLUSION

Having determined that there is a contract between the parties containing a putative arbitration provision,[1] that the parties have agreed to delegate threshold questions about the arbitration provision to an arbitrator, and that Plaintiffs do not specifically challenge the validity of the delegation clause, the Court need not reach the remainder of the issues briefed by the parties. There is accordingly no need for arbitration-related discovery, however limited. "[C]ourts in this district have 'generally denied arbitration-related discovery absent a compelling showing that such discovery is required.'" *Am. Gen. Life Ins. Co. v. Harper*, No. 3:15CV605-DPJ-FKB, 2016 WL 430609, at *2 (S.D. Miss. Feb. 3, 2016) (quoting *Bell v. Koch Foods of Miss., LLC*, No. 3:08-cv-697-WHB-LRA, 2009 WL 1259054, at *3 (S.D. Miss. May 5, 2009), *aff'd* 358 F. App'x. 498 (5th Cir. 2009)) (other citations omitted). Plaintiffs cannot make a compelling showing that arbitration-related discovery is required because none of the issues before the Court require consideration of additional evidence. Singing River's Motion to Compel Arbitration will therefore be granted, and Plaintiffs' Motion to lift the stay of discovery will be denied.

---

[1] The Court has made no findings as to the validity of the arbitration provision. If there were no delegation clause, the Court would be obligated to address the validity of the purported arbitration clause. But the delegation clause reserves initial consideration of this threshold issue for the arbitrator.

- 10 -

**IT IS THEREFORE ORDERED AND ADJUDGED** that the [3] Motion to Compel Arbitration filed by Defendant Singing River Electric Cooperative is **GRANTED**, and the [9] Motion for Limited Lifting of the Stay on Discovery filed by Plaintiffs Barrett Baria, Edward Zielinski, and Lorraine Zielinski is **DENIED**. Plaintiffs are directed to individually arbitrate their claims pursuant to section 11.05 of the Singing River Electric Cooperative bylaws.

**IT IS FURTHER ORDRED AND ADJUDGED** this case shall be **administratively closed** pending conclusion of arbitration. In the event that further proceedings in this Court are necessary, the parties are directed to contact the chambers of the Magistrate Judge within seven (7) days of the conclusion of arbitration.

**SO ORDERED AND ADJUDGED** this the 3rd day of June, 2019.

s/ *Louis Guirola, Jr.*
LOUIS GUIROLA, JR.
UNITED STATES DISTRICT JUDGE