IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

**BARRETT BARIA,** *et al.*  **PLAINTIFFS**

**v.**  **CIVIL ACTION NO. 1:19-CV-248-KS-JCG**

**SINGING RIVER ELECTRIC COOPERATIVE**  **DEFENDANT**

### MEMORANDUM OPINION AND ORDER

For the reasons provided below, the Court **denies** Plaintiffs' Motion for Leave to File [46] a Third Amended Complaint, **grants** Defendant's Motion to Dismiss [43], and **denies** Defendant's Motion to Stay Pending Appeal [36] **as moot**. This case is dismissed with prejudice.

### I. BACKGROUND

The Court has previously discussed the background of this case. *See Baria v. Singing River Elec. Coop.*, 2019 WL 2343841, at *1 (S.D. Miss. June 3, 2019). On June 3, 2019, the Court entered a Memorandum Opinion and Order [17] granting Defendant's Motion to Compel Arbitration [3], denying Plaintiffs' Motion for Limited Lifting of the Stay on Discovery [9], and administratively closing the case pending the parties' completion of arbitration. *Id.* at *5. The Court held that the parties had executed a valid arbitration agreement because Plaintiffs' application for service incorporated Defendant's bylaws, and the bylaws include an arbitration provision. *Id.* at *3. The Court also noted that the Mississippi legislature specifically granted Defendant's board of directors the authority to adopt and amend the bylaws

regulating the terms and conditions upon which Defendant provides services to its members "as the board may deem appropriate or desirable." *Id.* (quoting MISS. CODE ANN. § 77-5-223(a)). Finally, the legislature prescribed that Defendant's members must "comply with the terms and conditions in respect to membership contained in the bylaws . . . ." *Id.* (quoting MISS. CODE ANN. § 77-5-225).

The Court also concluded that the parties to the contract had agreed to delegate questions of arbitrability to the arbitrator by incorporating the Rules of the American Arbitration Association ("AAA"). *Id.* at *4 (citing *Arnold v. Homeaway, Inc.*, 890 F.3d 546, 551-52 (5th Cir. 2018)). Therefore, the Court concluded that Plaintiffs' arguments as to the enforceability or validity of the arbitration provision must be presented to the arbitrator. *Id.* at *3-*4.

On June 18, 2019, Plaintiffs filed a Motion for Reconsideration [18]. Among other things, they argued that they did not assent to the inclusion of an arbitration provision in their contract with Defendant. In response, Defendant argued that *all* contracts for service with a power cooperative *automatically* incorporate the cooperative's bylaws by operation of Mississippi law.

The Court held that a party seeking to enforce an arbitration provision must first demonstrate that the parties agreed to the provision. *Baria v. Singing River Elec. Coop.*, 2020 WL 1277202, at *2-*3 (S.D. Miss. Mar. 17, 2020). In the context of this case, a question of bylaw interpretation "begins with reviewing [the power cooperative's] application-for-service form" to see if the parties actually incorporated

2

the bylaws. *Id.* at *3 (quoting *The Door Shop, Inc. v. Alcorn County Elec. Power Ass'n*, 261 So. 3d 1099, 1104 (Miss. 2018)). Although it was undisputed that the parties executed contracts for services in the form of Plaintiffs' applications, the record contained no evidence of the content of those applications. *Id.* Accordingly, the Court held that Defendant had failed to demonstrate that Plaintiffs' contracts incorporated the cooperative's bylaws, and the Court declined to create a precedent that all contracts for service with Mississippi power cooperatives automatically incorporate the bylaws by operation of statute. *Id.* Finally, the Court noted that Defendant only needed to produce copies of the contracts and demonstrate that they incorporated the terms of the bylaws, as other power cooperatives had done in similar cases. *Id.*

Defendant filed a Notice of Appeal [35] of the Court's ruling on April 16, 2020, and a week later it filed a Motion to Stay [36] the case pending resolution of the appeal.[1] After the Motion to Stay [36] was briefed, Defendant also filed a Motion to Dismiss [43], citing the Court's ruling in a virtually identical case brought by Plaintiffs' counsel against a different power cooperative. *See Harper v. S. Pine Elec. Coop.*, 2020 WL 2120413 (S.D. Miss. Feb. 12, 2020); *Harper v. S. Pine Elec. Coop.*, 2020 WL 2114366 (S.D. Miss. May 4, 2020). Plaintiffs then filed a Motion for Leave to File an Amended Complaint [46]. All three motions are ripe for review.

---

[1] An interlocutory appeal from denial of a motion to compel arbitration does not divest the district court of jurisdiction to proceed to the merits. *Weingarten Realty Investors v. Miller*, 661 F.3d 904, 908-09 (5th Cir. 2011).

3

## **II. MOTION TO AMEND [46]**

Plaintiffs seek leave to file an amended complaint to "clarify" their allegations. They have already amended twice and can now do so "only with the opposing party's written consent or the court's leave," but "[t]he court should freely give leave when justice so requires." FED. R. CIV. P. 15(a)(2). Indeed, Rule 15 "evinces a bias in favor of granting leave to amend," *Thomas v. Chevron USA, Inc.*, 832 F.3d 586, 590 (5th Cir. 2016), and a "district court must possess a substantial reason to deny a request for leave to amend." *Smith v. EMC Corp.*, 393 F.3d 590, 595 (5th Cir. 2004). "[L]eave to amend . . . is by no means automatic," however. *Little v. Liquid Air Corp.*, 952 F.2d 841, 845-46 (5th Cir. 1992). "[P]ermissible reasons for denying a motion for leave to amend include undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc." *Id.* The "[p]laintiff bears the burden of showing that delay was due to oversight, inadvertence or excusable neglect . . . ." *Parish v. Frazier*, 195 F.3d 761, 763 (5th Cir. 1999).

In the proposed Third Amended Complaint, Plaintiffs allege: "Rather than returning excess revenues from rate payments not devoted to operating and maintenance expenses, related debt obligations, and/or reserves for improvements, new construction, depreciation or contingencies, Defendant has accumulated and retained, converted, and/or misappropriated them." Exhibit A to Motion for Leave to

Amend at 6, *Baria v. Singing River Elec. Coop.*, No. 1:19-CV-248-LG-JCG (S.D. Miss. June 4, 2020), ECF No. 46-1. Plaintiffs contend that they are entitled to the return of such revenues, as required by MISS. CODE ANN. § 77-5-235. *Id.* Although Plaintiffs asserted a variety of claims, this alleged statutory violation forms the factual predicate underlying each one.

However, Plaintiffs made it clear in their reply brief that they are challenging the reasonableness and necessity of the decisions made by Defendant's board, rather than claiming that the Board retained funds that the Board itself did not believe were necessary for reserves, improvements, and other contingencies. *See* Reply at 2, *Baria v. Singing River Elec. Coop.*, No. 1:19-CV-248-KS-JCG (S.D. Miss. June 25, 2020), ECF No. 54. As the Court notes below, the statute grants Defendant's board *complete* discretion to determine how much reserve funds it should retain for improvements, new construction, and other contingencies. MISS. CODE ANN. § 77-5-235(5). Plaintiffs know this. They admitted as much in briefing, and argued that the Court must intervene nonetheless because the Mississippi legislature granted power cooperatives a monopoly on electric power services and complete discretion in setting their rates and use of their revenues. *Id.* at 1-2. In other words, Plaintiffs' latest proposed amendment is nothing more than an attempt to use artful pleading to avoid dismissal for the reasons the Court has already articulated in related cases, while Plaintiffs' actual goals have not changed.

Nothing alleged in the proposed Third Amended Complaint would change the

5

Court's analysis regarding the broad – indeed, unfettered – discretion granted to the boards of electric power cooperatives by the relevant statutes. Therefore, the Court finds that the amendment would be futile, and that leave to amend should be denied.

Additionally, Plaintiffs have unduly delayed seeking leave to amend. Plaintiff Baria filed the initial Complaint in state court on March 22, 2019. Three days later, he filed a First Amended Complaint. Defendant removed the case on April 19, 2019, and on April 29, 2019, Plaintiffs filed the Second Amended Complaint [7], which is currently the operative pleading. Over a year later, Plaintiffs filed the instant motion, seeking leave to amend for a third time, after the parties had fully litigated the issue of arbitration and Defendant had filed a motion to dismiss. Plaintiffs have not provided any reason for the delay in seeking yet another amendment, much less demonstrated that the "delay was due to oversight, inadvertence or excusable neglect . . . ." *Parish*, 195 F.3d at 763. Indeed, they implicitly admitted in briefing that the impetus for the instant motion was the Court's ruling in a related case.

For all these reasons, the Court **denies** Plaintiffs' Motion for Leave to File Amended Complaint [46].

### III. MOTION TO DISMISS [43]

Defendant filed a Motion to Dismiss [43]. To survive a Rule 12(b)(6) motion, the "complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Great Lakes Dredge & Dock Co. LLC v. La. State*, 624 F.3d 201, 210 (5th Cir. 2010). "To be plausible, the complaint's factual

6

allegations must be enough to raise a right to relief above the speculative level." *Id.* (punctuation omitted). The Court must "accept all well-pleaded facts as true and construe the complaint in the light most favorable to the plaintiff." *Id.* But the Court will not accept as true "conclusory allegations, unwarranted factual inferences, or legal conclusions." *Id.* Likewise, "a formulaic recitation of the elements of a cause of action will not do." *PSKS, Inc. v. Leegin Creative Leather Prods., Inc.*, 615 F.3d 412, 417 (5th Cir. 2010) (punctuation omitted). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Ashcroft v. Iqbal*, 556 U.S. 662, 679, 129 S. Ct. 1937, 1950, 173 L. Ed. 2d 868 (2009).

The primary question presented by this case is how much discretion Mississippi law grants the boards of directors of rural power cooperatives with respect to the retention of funds. Plaintiffs, members of the Defendant power cooperative, contend that Defendant has no discretion and must return all "excess revenues" to its members. Defendant contends that the legislature granted it unfettered discretion to determine how much it should hold in reserve for improvements and other contingencies.

In reaching these conclusions, the parties applied different versions of the same statute, Miss. Code Ann. § 77-5-235. Plaintiffs argue that the Court should apply the former version of the statute because they are only seeking a refund of excess revenues retained prior to the statute's amendment. The former version of the statute provides:

7

> A corporation formed under the provisions of this article shall have power to charge reasonable fees, rents, tolls, prices and other charges for service rendered which shall be sufficient at all times to pay all operating and maintenance expenses necessary or desirable for the prudent conduct and operation of its business and to pay the principal of and interest on such obligations as the corporation may have issued and/or assumed in the performance of the purpose for which it was formed. The revenues and receipts of a corporation shall first be devoted to such operating and maintenance expenses and to the payment of such principal and interest and thereafter to such reserves for improvement, new construction, depreciation and contingencies as the board may from time to time prescribe. Revenues and receipts not needed for these purposes shall be returned to the members, by the reimbursement of membership fees, or by way of general rate reductions, as the board may decide.

MISS. CODE ANN. § 77-5-235 (1936).

Defendant argues that the Court should apply the current version of the statute regardless of whether Plaintiffs seek funds retained prior to the amendment. The current version of the statute provides:

> A corporation's rates for energy furnished or offered by the corporation shall be sufficient at all times to pay all operating and maintenance expenses necessary or desirable for the prudent conduct and operation of its business and to pay the principal of and interest on such obligations as the corporation may have issued and/or assumed in the performance of the purpose for which it was formed. The revenues and receipts of a corporation shall first be devoted to such operating and maintenance expenses and to the payment of such principal and interest and thereafter to such reserves for improvement, new construction, depreciation and contingencies as the board may from time to time prescribe. Revenues and receipts not needed for these purposes shall be returned to the members by such means as the board may decide, including through the reimbursement of membership fees, the implementation of general rate reductions, the limitation or avoidance of future rate increases, or such other means as the board may determine.

MISS. CODE ANN. § 77-5-235(5) (2016).

Plaintiffs contend that no statute is given retroactive effect under Mississippi law "unless it is manifest from the language that the legislature intended it to so operate." *Mladinich v. Kohn*, 186 So. 2d 481, 483 (Miss. 1966). Thus, Plaintiffs argue that unless the new version of Miss. Code Ann. § 77-5-235 contains an express declaration that it applies retroactively, it does not do so. This is, at best, an incomplete statement of the applicable law.

Plaintiffs are correct that generally "statutes will be construed to have a prospective operation only, unless a contrary intention is manifested by the clearest and most positive expression." *Cellular South, Inc. v. BellSouth Telecomms., LLC*, 214 So. 3d 208, 213 (Miss. 2017) (quoting *Boston v. Hartford Acc. & Ind. Co.*, 822 So. 2d 239, 245 (Miss. 2002)). In other words, "[a] statute will not be given retroactive effect unless it is manifest from the language that the legislature intended it to so operate." *Id.* (quoting *Mladinich v. Kohn*, 186 So. 2d 481, 484 (Miss. 1966)). However, Plaintiffs omitted an exception to the general rule:

> [T]he effect of a repealing statute is to abrogate the repealed statute as completely as if it had never been passed, and . . . a statute modifying a previous statute has the same effect as though the statute had all the while previously existed in the same language as that contained in the modified statute, unless the repealing or modifying statute contains a saving clause.

*Id.* at 214 (quoting *Stone v. Indep. Linen Serv. Co.*, 55 So. 2d 165, 168 (Miss. 1951)). Accordingly, "every right or remedy created solely by [a] repealed or modified statute disappears or falls with the repealed or modified statute, unless carried to final judgment before the repeal or modification, save that no such repeal or modification

9

shall be permitted to impair the obligation of a contract or to abrogate a vested right." *Id.*; *see also Wilson v. William Hall Chevrolet, Inc.*, 871 F. Supp. 279, 281 (S.D. Miss. 1994); *Deposit Guaranty Bank & Trust Co. v. Williams*, 9 So. 2d 638, 639 (Miss. 1942).

Plaintiffs contend that this rule is only applicable in cases involving a "public right" and lawsuits between the state and a private individual, but they cited no authority establishing or citing such limitations.[2] In *Cellular South*, the Mississippi Supreme Court drew a distinction between cases involving "application of a wholly new statute . . . that modified existing rights that existed independently of and before the existence of the statute," and cases involving "an amendment to an existing statute." *Cellular South*, 214 So. 3d at 213. Whether the parties are public entities or private individuals is irrelevant. The question is whether the rights and remedies at issue preexisted the statute or were created by it. *Id.* at 215. Plaintiffs do not deny that the rights at issue here were created by the statute in question. Therefore, "absent an applicable saving clause, a final judgment, or a loss to [Plaintiffs] of a vested right," the Court must apply the statute "as though it has always read as it reads today." *Id.*

The parties have not identified a savings clause in the statute, and the Court has not entered a final judgment. Therefore, the Court must determine whether application of the amended statute would "abrogate a vested right." *Id.* at 214. If so,

---

[2] In fact, subsequent cases have applied *Cellular South* in the same manner this Court did, without mentioning the limitations Plaintiffs urge. *See Bennett Tax Co. Inc. v. Newton County*, --- So. 3d ---, 2020 WL 3248466, at *3-*4 (Miss. Ct. App. June 16, 2020); *Miss. Dep't of Corrections v. Roderick & Solange Macarthur Justice Ctr.*, 220 So. 3d 929 (Miss. 2017).

the old version of the statute applies. If not, the amended version applies. Moreover, this question – whether Plaintiffs have a vested right in the reserve funds held by Defendant – determines the viability of Plaintiffs' entire case, as the Court will explain.

"A right is vested when it has become a completed, consummated right for present or future enjoyment; not contingent; unconditional; absolute." *Estate of Greer v. Ball*, 218 So. 3d 1136, 1140 (Miss. 2017). The Mississippi Supreme Court has defined a "vested right" as "a contract right, a property right, or a right arising from a transaction in the nature of a contract which has become perfected to the degree that it is not dependent on the continued existence of the statute." *State ex rel. Pittman v. Ladner*, 512 So. 2d 1271, 1275-76 (Miss. 1987). "Outside the contract and property contexts, an example of a right so vested would be a 'tort' claim *after* it had been reduced to a judgment." *Ladner*, 512 So. 2d at 1276.

Plaintiffs asserted in briefing that "the unconditional right of Plaintiffs, and other member-ratepayers similarly situated, to the return of their proportionate share of accumulated revenues not devoted to the statutorily prescribed purposes vested to them well before" the legislature amended the statute. Memorandum of Law in Opposition to Motion to Dismiss at 6, *Baria v. Singing River Elec. Power Coop.*, No. 1:19-CV-248-KS-JCG (S.D. Miss. June 10, 2020), ECF No. 51. In support of this proposition, Plaintiffs cited *United States v. Mississippi Chemical Company*, 326 F.2d 569 (5th Cir. 1964). There, the Fifth Circuit held that the amount of patronage

11

dividends an agricultural cooperative paid its members should be excluded from the cooperative's taxable income because "a legally enforceable obligation exist[ed] to refund to qualified purchasers (stockholder-patrons) their proportionate share of gross receipts above costs and operating expenses based upon their respective purchases . . . ." *Id.* at 570-71. Accordingly, the Court of Appeals held that "such receipts [were] the income of the patron and not income of the cooperative . . . ." *Id.* at 571.

But whether a payment qualifies as taxable income under federal tax law is a different question than whether a property right has vested under Mississippi law. While *Mississippi Chemical* is not wholly irrelevant, it is limited in its applicability to the present question. Moreover, the Court of Appeals approvingly cited authorities providing that "the legally enforceable obligation to pay patronage refunds is destroyed to the extent that discretion to divert exists," suggesting that *any* discretion on the part of the cooperative with respect to the administration of such funds destroys the potential property right that its members may have in them. *Id.* This harmonizes with the Mississippi Supreme Court's holding that "[a] right is vested when" it is "not contingent; unconditional; absolute." *Greer*, 218 So. 3d at 1140.

Plaintiffs also argue that *Carranza-De Salinas v. Holder*, 700 F.3d 768 (5th Cir. 2012), prohibits the retroactive application of an amended statute. *Carranza-De Salinas* is inapplicable here because it addressed a question of federal law, rather than Mississippi law. The statutory right which Plaintiffs seek to enforce and the

12

remedies they demanded are creatures of Mississippi law, and, therefore, Mississippi law determines the retroactivity of the statute in question. *Cf. Johnson v. Sw. Reg'l Med. Ctr.*, 878 F.2d 856, 859 (5th Cir. 1989).

Regardless, *Carranza-De Salinas* provides: "To determine when a law may not apply retroactively, we look to whether such application would take away or impair vested rights acquired under existing laws, or create a new obligation, impose a new duty, or attach a new disability, in respect to transactions or considerations already past." *Carranza-De Salinas*, 700 F.3d at 772. As the Court concludes below, application of the current version of the statute will not impair any vested right because the previous version did not grant Plaintiffs a vested right to the funds at issue.

This brings us to the fundamental legal question at the heart of this case: whether the statute in question grants Plaintiffs un unconditional right to the return of funds that Defendant's board has deemed necessary to reserve for improvements and other contingencies. The Court concludes that the statute does not create an unconditional, absolute right to the return of such funds, regardless of which version the Court applies.

The former version of the statute, which Plaintiffs urge the Court to apply, provides that power cooperatives' "revenues and receipts . . . shall first be devoted to such operating and maintenance expenses and to the payment of such principal and interest and thereafter *to such reserves for improvement, new construction,*

13

*depreciation and contingencies as the board may from time to time prescribe.*" MISS. CODE ANN. § 77-5-235 (1936) (emphasis added). Then, "[r]evenues and receipts not needed for these purposes shall be returned to the members, by the reimbursement of membership fees, or by way of general rate reductions, as the board may decide." *Id.*

In other words, in the former version of the statute, the legislature granted power cooperatives the discretion to retain capital reserves for improvements and other contingencies "as the board may from time to time prescribe," after it met its operating expenses and other obligations. *Id.* Then, the statute directed cooperatives to return capital not needed for that purpose to the members, by rate reductions or reimbursement of membership fees. *Id.* To be clear, the legislature granted the cooperatives' boards of directors the power to make these decisions. MISS. CODE ANN. § 77-5-223 (1936).

The current version of the statute provides power cooperatives the same discretion to retain capital reserves for improvements and other contingencies "as the board may from time to time prescribe," after it meets its operating expenses and other obligations. MISS. CODE ANN. § 77-5-235(5) (2016). Then, just like the former version of the statute, cooperatives are required to return funds to members. *Id.* But the new version of the statute grants the cooperatives complete discretion to determine how the funds are returned to the members. *Id.* Like the former version, the current law grants the cooperatives' boards of directors the power to make these

14

decisions. MISS. CODE ANN. § 77-5-223 (2016).

Accordingly, both versions of the statute grant power cooperatives the discretion to retain capital reserves for improvements and other contingencies, and neither version grants members an unconditional, absolute right to the return of such funds. Moreover, both versions of the statute give power cooperative boards complete discretion to determine how much reserves are necessary.

This reading of the two versions of the statute harmonizes with the Mississippi Supreme Court's holding that "equity credits allocated to a patron on the books of [an agricultural] cooperative do not reflect an indebtedness which is presently due and payable by the cooperative to the patron." *Clarke County Co-op., (AAL) v. Read*, 139 So. 2d 639, 884 (Miss. 1962).

> Such equity credits represented patronage dividends which the board of directors of a cooperative, acting under statutory authority so to do, has elected to allocate to its patrons, not in cash or other medium of payment which would immediately take such funds out of the working capital of the cooperative, but in such manner as to provide or retain capital for the cooperative and at the same time reflect ownership interest of the patron in such retained capital.

*Id.* at 884-85. Also, other courts have found that cooperatives are not required to return capital credits to their members where the enabling legislation provided the cooperative discretion in the management and allocation of its funds. *See, e.g. Walker v. Oglethorpe Power Coop.*, 802 S.E. 2d 643, 668 (Ga. Ct. App. 2017) (where statute gave cooperative the right to maintain reserves for future needs, it was not required to return capital credits to members); *Cessna v. REA Energy Coop., Inc.*, 258 F. Supp.

15

3d 566, 586 (W.D. Penn. 2017) (where cooperative's bylaws granted the board discretion to determine whether retiring capital credits would impair the financial condition of the cooperative, board was not required to retire capital credits), *aff'd* 753 F. App'x 124, 1129 (3rd Cir. 2018).

For these reasons, the Court finds that the former version of Miss. Code Ann. § 77-5-235 (1936), does not grant members of power cooperatives a vested present, possessory right in funds that the power cooperative board has reserved for improvements and other contingencies. Accordingly, the current version of the statute applies here. Moreover, neither the former version of the statute nor the current version require Defendant to return such funds to its members in the manner Plaintiffs contend. Therefore, all Plaintiffs' claims fail because they are premised upon an incorrect interpretation of the applicable law.

## IV. CONCLUSION

For these reasons, the Court **denies** Plaintiffs' Motion for Leave to File [46] a Third Amended Complaint, **grants** Defendant's Motion to Dismiss [43], and **denies** Defendant's Motion to Stay Pending Appeal [36] **as moot**. This case is dismissed with prejudice.

SO ORDERED AND ADJUDGED this 15th day of July, 2020.

                                            /s/    Keith Starrett
                                               KEITH STARRETT
                              UNITED STATES DISTRICT JUDGE